UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial
and Service Workers International
Union, AFL-CIO, CLC, *et al.*,

                           Plaintiffs,

                                         Civ. No. 06-3495 (RHK/JSM)
                                      **MEMORANDUM OPINION AND**
                                      **ORDER**

v.

Carlisle Power Transmission Products, Inc.,

                           Defendant.

Scott A. Higbee, John G. Engberg, Mark W. Bay, Peterson, Engberg & Peterson, Minneapolis, Minnesota, for Plaintiffs.

William S. Rutchow, Richard R. Parker, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Nashville, Tennessee, Michael J. Moberg, Jason M. Hedican, Briggs and Morgan, P.A., Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

In this action, Plaintiffs seek to compel arbitration of labor-relations disputes with Defendant Carlisle Power Transmission Products, Inc. ("Carlisle"). Carlisle has moved to dismiss, arguing that Plaintiffs released their claims against it and, accordingly, it has no obligation to arbitrate Plaintiffs' claims. For the reasons set forth below, the Court will deny the Motion. Moreover, because the Court concludes, as a matter of law, that the parties' disputes are arbitrable, the Court will *sua sponte* grant summary judgment on Plaintiffs' claim seeking an order compelling arbitration.

## BACKGROUND

This action arises out of the shutdown of Carlisle's Red Wing, Minnesota production facility in 2005. The individual Plaintiffs[1] were employees of that facility and were represented during their employment by Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC (the "Union"). (Compl. ¶ 3.) The Union and Carlisle were parties to a collective-bargaining agreement (the "CBA") at all times material to the claims in the Complaint. (Id. ¶ 5.)

By letter to the Union dated April 13, 2005, Carlisle announced its decision to close the Red Wing facility as of September 16, 2005, with layoffs occurring in stages up to that date. (Id. ¶ 6.) Thereafter, the Union and Carlisle entered into an agreement (the "Plant Closing Agreement") pursuant to which laid-off employees, including the individual Plaintiffs, would be paid severance based on the number of years they were employed at Carlisle, but would be required to execute a release (the "Release") in exchange for the severance payment. (Id. ¶ 6 & Ex. C, § I.)[2] In addition, the Plant Closing Agreement

---

[1] Charles Charbonneau, Shirley DeGavinnie, Jim Ellis, Jon Olson, and Michael Riley.

[2] The Release provided that the employee:

fully and finally releases and forever discharges [Carlisle] from any and all claims, demands, lawsuits, charges, debts, liabilities, damages, financial obligations, and causes of action at law or in equity of every kind and nature, whether known or unknown, which [he or she] had or now has, in connection with Employee's employment, termination of employment, or any other matter which may have arisen through the date of execution of this Agreement by Employee. This Release includes, but is not limited to, any wrongful discharge, retaliation or any discrimination claims under local, state, or federal law. This does not

granted Carlisle the right to lay off employees based on "production requirements and the orderly shutdown of the facility," rather than based on their seniority (as required by the CBA). (Id. Ex. C, § A(2).)

At the heart of this case is an arbitration provision in the Plant Closing Agreement. Pursuant to that provision, "any alleged violation" of the Agreement "will be subject to the grievance procedure provisions of the [CBA]." (Id. Ex. C, § H.) The CBA, in turn, contains a three-step grievance procedure, culminating in arbitration of a dispute in the third and final step. (Id. Ex. A, § 10.3.)

Pursuant to the Plant Closing Agreement, Charbonneau received his severance payment and signed a Release on July 13, 2005. (Hedican Aff. Ex. 1.) Six days later, on July 19, 2005, the Union filed a grievance on Charbonneau's behalf, arguing that Carlisle had improperly calculated his years of service and, hence, miscalculated his severance pay. (Compl. ¶¶ 13-14.) DeGavinnie, Ellis, and Olson raised similar complaints concerning the calculation of their severance payments, so the Union and Carlisle agreed that the outcome of Charbonneau's grievance would be determinative of their complaints.[3] (Id. ¶ 14.)

---

apply to workers compensation or unemployment, and 401k retirement benefits.

Employee further promises that neither Employee nor any person, organization or entity acting on [his or her] behalf will file or institute any suit or action or other proceeding at law or in equity against the Company alleging any claim Employee had or now has relating to or arising out of Employee's employment or termination of that employment.

(Compl. Ex. C, attachment B.)

[3] The basis for Charbonneau's grievance was that Carlisle had failed to count the years he had worked at a Carlisle facility in Minneapolis when calculating his severance pay. (Compl. ¶ 13.)

Nevertheless, these individuals accepted severance pay from Carlisle and, as required under the Plant Closing Agreement, signed Releases in exchange therefor. (Id. ¶ 7; Hedican Aff. Exs. 2-4.)

Meanwhile, Carlisle laid off Riley. (Compl. ¶ 17.) On September 22, 2005, the Union filed a grievance on Riley's behalf, asserting that Carlisle had violated the CBA and the Plant Closing Agreement by laying off Riley prior to less-senior employees. (Id. ¶ 18 & Ex. F.) The next day, Riley accepted his severance payment and signed a Release. (Id. ¶ 7; Hedican Aff. Ex. 5.)

Ultimately, Carlisle denied Charbonneau's and Riley's grievances. (Compl. ¶ 19.) The Union then demanded arbitration, in accordance with the grievance process established by the CBA. (Id. ¶ 19.) Carlisle refused to arbitrate, asserting that Plaintiffs had waived their claims when they signed the Releases. (Id. ¶ 25 & Ex. G.)

As a result, on August 28, 2006, the Union and the individual Plaintiffs commenced the instant action. They seek an Order compelling arbitration of the parties' disputes (Count I) or, in the alternative, damages for Carlisle's alleged breaches of the Plant Closing Agreement (Counts II and III). Relying on the Releases, Carlisle now moves to dismiss.

**STANDARD OF DECISION**

Carlisle seeks dismissal under Federal Rule of Civil Procedure 12(b)(6). In ruling on such a motion, a court must construe the complaint liberally, drawing all reasonable

---

DeGavinnie, Ellis, and Olson also worked at the Minneapolis facility before transferring to Red Wing.

4

inferences in the plaintiff's favor. Katun Corp. v. Clarke, __ F.3d __, 2007 WL 1264082, at *2 (8th Cir. May 2, 2007). A cause of action should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." Schaller Tel. Co. v. Golden Sky Sys., Inc., 298 F.3d 736, 740 (8th Cir. 2002).

In their Opposition, Plaintiffs argue that Carlisle has submitted materials outside of the pleadings and that the Court should convert the Motion to one for summary judgment. (Mem. in Opp'n at 5 & n.1.) It is true that a court may convert a motion to dismiss into a motion for summary judgment when the moving party has submitted matter outside of the pleadings. See Casazza v. Kiser, 313 F.3d 414, 418 (8th Cir. 2002). Here, however, Carlisle has merely submitted an affidavit attaching (1) executed copies of Plaintiffs' Releases, which are referenced in the Complaint, and (2) a copy of a spreadsheet that was attached to the Plant Closing Agreement, which was itself attached to the Complaint. These items are not "outside" of the pleadings. See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005) (court may consider matters incorporated by reference into complaint when ruling on motion to dismiss); Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").[4] Accordingly, the Court will not convert Carlisle's Motion into one for

---

[4] A declaration also is attached to the affidavit, but the Court has not considered any of the averments contained therein. See Casazza, 313 F.3d at 418 (in ruling on motion to dismiss, court has discretion not to consider matters extraneous to pleadings).

summary judgment, and will analyze the Motion under the Rule 12(b)(6) standard set forth above.

## ANALYSIS

**I.     Carlisle's Motion to Dismiss Must be Denied.**

Carlisle argues that Plaintiffs' claims must be dismissed because Plaintiffs signed Releases in which they waived any claims they might have against the company.[5] In response, Plaintiffs argue that the parties' disputes – including whether Plaintiffs have waived their claims – must be resolved in arbitration, because the disputes fall within the ambit of the arbitration clause in the Plant Closing Agreement. (Mem. in Opp'n at 6-12.) The Court agrees.

Where, as here, a party asserts that a dispute is arbitrable, two threshold questions arise. First, the Court must decide whether a valid agreement to arbitrate exists. Lipton-U. City, LLC v. Shurgard Storage Ctrs., Inc., 454 F.3d 934, 937 (8th Cir. 2006). Second, if such an agreement does exist, then the Court must consider the scope of the arbitration provision and determine whether it "arguably cover[s] the dispute at hand." Id. In answering these questions, the Court must be mindful that there exists a strong federal policy favoring arbitration and that doubts must be resolved in favor of arbitration. E.g., CD Partners, LLC

---

[5] Carlisle also argues that it did not violate the Plant Closing Agreement when it calculated the individual Plaintiffs' severance or when it laid off Riley. (Def. Mem. at 6-8.) Because the Court concludes that the parties' disputes are arbitrable, it does not reach these arguments. See Marshall v. Green Giant Co., 942 F.2d 539, 547 (8th Cir. 1991) (noting jurisprudence from Supreme Court and Eighth Circuit "warn[ing] district courts not to decide the merits of [a] dispute headed to arbitration").

v. Grizzle, 424 F.3d 795, 800 (8th Cir. 2005).[6]

There can be little doubt that a valid agreement to arbitrate exists in this case. The Plant Closing Agreement includes a dispute-resolution provision, which incorporates the grievance procedure in the CBA. (See Compl. Ex. C, § H.) And, the third step of the CBA's grievance procedure expressly requires arbitration of disputes.

Similarly, there is little doubt that the arbitration provision in the Plant Closing Agreement covers the parties' disputes. That provision is broadly worded, stating that "*[a]ny* alleged violation of the . . . Plant Closing Agreement" is subject to arbitration. (Id. (emphasis added).) Plaintiffs claim that Carlisle violated the Plant Closing Agreement by failing to pay them all of the severance they were due and by laying off Riley before other employees with less seniority. In other words, Plaintiffs' claims necessarily and directly arise out of the Plant Closing Agreement and, hence, fall within the ambit of the arbitration clause in that Agreement.[7]

---

[6] There is also a threshold issue as to who answers the question of arbitrability – in other words, does the Court or an arbitrator decide whether the dispute is arbitrable? Unless the parties "clearly and unmistakably" delegated that question to the arbitrator, however, then it is to be answered by the Court. AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986); accord First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Here, there has not been a "clear and unmistakable" delegation of the arbitrability question to an arbitrator. Hence, the Court will answer that question. Id.

[7] At oral argument, Carlisle asserted that the present disputes are not arbitrable because they arise out of Plaintiffs' Releases (which do not provide for arbitration) rather than the Plant Closing Agreement. This argument is meritless. Indeed, the Releases would not exist absent the Plant Closing Agreement, which expressly required Plaintiffs to sign the Releases in order to receive severance payments. Moreover, the claims pled in the Complaint specifically allege violations of the Plant Closing Agreement, not the Releases.

Accordingly, the answers to the two "threshold" questions indicate that the parties' disputes are arbitrable. Carlisle argues, however, that there no longer exists a valid agreement to arbitrate because Plaintiffs signed the Releases, which waived any claims they might assert against Carlisle and which contained covenants not to commence "any proceeding" against the company. (Reply Mem. at 3-4.) The are two flaws in this argument.

First, the Releases contain no language *expressly* repudiating the arbitration clause in the Plant Closing Agreement. In the absence of such language, the Court cannot conclude that Plaintiffs, by signing the Releases, intended to forego their arbitration rights. See Beck v. Reliance Steel Prods. Co., 860 F.2d 576, 581 (3rd Cir. 1988) (rejecting argument that dispute arising under collective-bargaining agreement was not arbitrable despite separate agreement allegedly settling dispute, because later agreement did not *expressly* modify arbitration clause in CBA); L.O. Koven & Brother, Inc. v. Local Union No. 5767, United Steelworkers of Am., 381 F.2d 196, 205 (3rd Cir. 1967).

In fact, the Plant Closing Agreement expressly states that all employees receiving severance payments would be required to sign Releases. (See Compl. Ex. C, § I.) Yet, the Agreement also provides for arbitration of disputes arising thereunder. (Id., § H.) The inescapable conclusion, therefore, is that the Releases only were intended to waive claims *not* arising under the Plant Closing Agreement; were it otherwise, there would be no need for the arbitration provision in the Agreement. Stated differently, if the Releases truly were intended to waive all claims Plaintiffs might bring, including claims arising under the

8

Plant Closing Agreement, then Plaintiffs would not be entitled to seek relief for a violation of that Agreement. Hence, there would be no need for the Agreement to include a provision allowing for arbitration of disputes arising thereunder – that provision would be superfluous. The Court must eschew such a result. See Restatement (Second) of Contracts § 203(a) (1981) ("In the interpretation of a[n] agreement or a term thereof . . ., an interpretation which gives a[n] effective meaning to all the terms is preferred to an interpretation which leaves a part . . . of no effect.").

Second, "all potential affirmative defenses [to arbitration] must be raised before [the] arbitrator." Broadcast Arts Prods., Inc. v. Screen Actors Guild, Inc., 673 F. Supp. 701, 707 (S.D.N.Y. 1987); accord, e.g., Thomas James Assocs., Inc. v. Jameson, 102 F.3d 60, 68 (2d Cir. 1996) ("questions of affirmative defenses to the claim, such as estoppel or waiver," must be resolved by arbitrator); Local Union No. 370, Int'l Union of Operating Eng'rs, 786 F.2d 1356, 1358 (9th Cir. 1986); Int'l Union of Painters v. Diversified Flooring Specialist, Inc., No. 2:06-cv-0358, 2007 WL 923936, at *3 (D. Nev. Mar. 23, 2007). Release and waiver, of course, are affirmative defenses. See Fed. R. Civ. P. 8(c). Accordingly, the Releases' effect on Plaintiffs' claims must be determined in arbitration.

Kanmak Mills, Inc. v. Society Brand Hat Co., 236 F.2d 240 (8th Cir. 1956), is instructive in this regard. In Kanmak Mills, the parties had entered into several contracts for the delivery of cloth by the plaintiff to the defendant; the contracts contained arbitration clauses. After receiving several shipments from the plaintiff, the defendant claimed that the plaintiff's cloth was not up to contractual specifications, and the parties mutually agreed

9

to cancel their contracts. The defendant later claimed that it was entitled to damages from the plaintiff and demanded arbitration. In response, the plaintiff claimed that the defendant had released any claims against the plaintiff when it canceled the parties' contracts. The plaintiff submitted that issue to the arbitrators, who rejected it and awarded damages to the defendant.

The plaintiff then filed a petition in federal court seeking to vacate the arbitration award. The district court confirmed only a portion of the award, and both parties appealed. The Eighth Circuit, in reviewing the arbitration award, stated:

> On this appeal, it is contended for Kanmak [the plaintiff] . . . that the arbitrators . . . failed to hold that [the defendant] released Kanmak from its liability for breach of the six 1947 contracts by mutual agreement to cancel out the contracts . . . . This defense was submitted to the arbitrators and fully considered, discussed and settled by them. The arbitrators concluded that [the defendant's] letter of May 1, 1948 did not constitute a release of its claim against Kanmak for damages for breach of contract . . . . *Decision of that question was clearly for the arbitrators . . . .*

Id. at 250 (emphasis added). Kanmak, of course, is binding on this Court; accordingly, the same result must obtain here. See also L.O. Koven, 381 F.2d at 204-05 (cases "appear to view the arbitrability of release and settlement questions as obvious"; "unless a release explicitly discharges the parties from the collective bargaining agreement itself, or from the arbitration provisions thereof, . . . its effect should be determined by an arbitral forum"); Prudential Sec. Inc. v. Sugiura, 844 F. Supp. 411, 414 (N.D. Ill. 1994) (rejecting argument that releases could be construed as amendments to arbitration agreement; "It is true that the Releases may be a *defense* to [the plaintiff's] claims, but that is . . . grist for

the arbitrators' mill . . . .") (emphasis in original).

For these reasons, the effect of the Releases on Plaintiffs' claims must be determined in arbitration.  Accordingly, Carlisle's Motion to Dismiss will be denied.

## II. Because the Parties' Disputes are Arbitrable, the Court will *Sua Sponte* Grant Summary Judgment on Plaintiffs' Claim Seeking to Compel Arbitration and <u>Dismiss Plaintiffs' Remaining Claims Without Prejudice.</u>

As a result of the foregoing, it is clear that Plaintiffs are entitled to summary judgment on Count I of their Complaint, in which they seek an Order compelling arbitration of the parties' disputes.  Although Plaintiffs did not move for summary judgment in response to Carlisle's Motion, the Court enjoys the power to grant summary judgment *sua sponte* in these circumstances.[8]  See, e.g., Madewell v. Downs, 68 F.3d 1030, 1048 (8th Cir. 1995) (district court may enter summary judgment *sua sponte* where party had adequate opportunity to address issues and was on notice that right to judgment as a matter of law was at issue).  Because the Court concludes that the parties must arbitrate their disputes, and because Carlisle had an opportunity to address the arbitrability issue in its Reply Memorandum, there is no reason to delay compelling arbitration merely because Plaintiffs did not formally file a Motion seeking such relief.

Finally, the Court must determine whether to stay Plaintiffs' remaining claims while the parties arbitrate or dismiss those claims.  Where "the entire controversy between the

---

[8] In their Memorandum in Opposition to Carlisle's Motion, Plaintiffs did ask the Court to grant summary judgment in their favor on Count I of the Complaint.  (See Mem. in Opp'n at 12-13.)

parties is subject to and will be resolved by arbitration," a stay serves no obvious purpose and dismissal is appropriate. Filanto, S.p.A. v. Chilewich Int'l Corp., 789 F. Supp. 1229, 1242 (S.D.N.Y. 1992); accord Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998); Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988). Because the entire controversy here is subject to arbitration, the Court concludes that the proper procedural remedy is to compel arbitration and dismiss the remaining claims in the Complaint without prejudice.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** as follows:

1. Defendant's Motion to Dismiss (Doc. No. 6) is **DENIED**;

2. Summary judgment is **GRANTED** to Plaintiffs, *sua sponte*, on Count I of the Complaint (Doc. No. 1), and Defendant is **ORDERED** to arbitrate the parties' present disputes pursuant to Section H of the Plant Closing Agreement; and

3. Counts II and III of Plaintiff's Complaint are **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May  22 , 2007                                                              s/Richard H. Kyle
                                                                                                  RICHARD H. KYLE
                                                                                                  United States District Judge